UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL JOHNSON,

                Plaintiff,

v.

SOLUTIONS TO PORTFOLIOS, LLC,
d/b/a STP MANAGEMENT GROUP,
ACDI GROUP, LLC,
ANTHONY JOSEPH SWATSWORTH,
M & L ASSOCIATES LLC,
MONIQUE NICOLE JENKINS, a/k/a
MONIQUE NICOLE BARLEY and
LEMANUEL MILTON JENKINS II,

                Defendants.

_____/

## COMPLAINT

### I.      Introduction

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

2.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte,

1

North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in

the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft.

**II.     Jurisdiction**

6.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place

here.

**III.     Parties**

7.     Plaintiff Cheryl Johnson is an adult, natural person residing in Kent County,

Michigan.  Ms. Johnson is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Ms. Johnson is a "consumer," "debtor" and "person" as the terms are defined and used

in the MRCPA and MOC.

8.     Defendant Solutions To Portfolios, LLC ("STP"), also doing business as STP

Management Group, is an active North Carolina limited liability company. According the 2016

Annual Report filed by STP with the State of North Carolina, STP does business at 1805 Sardis

Road North, Suite 100, Charlotte, North Carolina 28270-1497. The registered agent and

managing member for STP is defendant Anthony Joseph Swatsworth, 1805 Sardis Road North,

Suite 100, Charlotte, North Carolina 28270-1497. STP uses interstate commerce and the mails in

a business the principal purpose of which is the collection of debts.  STP regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another.  STP is a "debt collector" as the term is defined and used in the FDCPA.  STP is a

"regulated person" as the term is defined and used in MRCPA.  Alternatively, STP is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      STP directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

10.     STP maintains an internet website (www.stpmanagementgroup.com) that states: "STP Management Group has been providing our creditor partners with a reliable recovery partner since 2011. Our experienced management team and highly trained recovery specialists help our clients to maximize the value of their receivables while reducing risk to their brand reputation. . . .  STP Management Group was founded with the mission to provide first class collections and recovery services to our creditors and partners while maintaining the best possible experience fo the consumer. . . .  STP Management Group accepts payments on behalf of our clients. See our Payments page for more information about the types of payments we accept."  The website provides a business address of 10020 Monroe Road, Suite 170-261, Matthews, North Carolina 28105, but the address is merely a private mailbox rented by STP from The UPS Store. The website provides contact email addresses of info@stpmanagementgroup.com and admin@stpmanagementgroup.com.

11.     The Better Business Bureau for Southern Piedmont Carolinas maintains an internet website that contains multiple consumer complaints regarding STP, describing the same unlawful debt collection practices that are described in this complaint. The BBB website also states that STP has approximately 30 employees and is in the business of operating call centers to collect consumer debts.

12.     On multiple occasions, STP has financed its purchase of delinquent consumer debt portfolios. Between September 15, 2014 and July 31, 2015, four UCC Financing Statements

were filed with the North Carolina Secretary of State, naming STP as the debtor, CMAX Finance Partners III LLC as the secured party, and delinquent consumer accounts and the proceeds therefrom as the collateral.

13.     Defendant ACDI Group, LLC ("ACDI) is an active North Carolina limited liability company. ACDI does business at 1805 Sardis Road North, Suite 100, Charlotte, North Carolina 28270-1497, in office space that it shares and co-mingles with STP. The registered agent and managing member for ACDI is defendant Anthony Joseph Swatsworth. According to reports filed by ACDI with the State of Georgia, ACDI claims to be doing business at 10020 Monroe Road, Suite 170-261, Matthews, North Carolina 28105, but the address is merely a private mailbox rented from The UPS Store and shared by ACDI and STP. ACDI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ACDI regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  ACDI is a "debt collector" as the term is defined and used in the FDCPA.  ACDI is a "regulated person" as the term is defined and used in MRCPA. Alternatively, ACDI is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     ACDI directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

15.     ACDI in the past has financed its purchase of delinquent consumer debt portfolios. On August 26, 2015, an UCC Financing Statement was filed with the North Carolina Secretary of State, naming ACDI as the debtor, PNC Bank, N.A. as the secured party, and delinquent consumer accounts and the proceeds therefrom as the collateral.

16.     Defendant Anthony Joseph Swatsworth, also known as "Swatty," age 34, is a

natural person, purportedly in Matthews, North Carolina 28105-5521. Mr. Swatsworth is an owner, officer, manager, employee and agent of defendants STP and ACDI.  Mr. Swatsworth uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Swatsworth regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Swatsworth is a "debt collector" as the term is defined and used in the FDCPA. Mr. Swatsworth is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Swatsworth is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

17.     Mr. Swatsworth (a) created the collection policies and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of STP and ACDI, (c) oversaw the application of the collection policies and procedures used by defendants and their employees and agents, (d) drafted, created, approved or ratified the tactics and scripts used by defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Johnson as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants and their employees and agents in attempts to collect an alleged debt from Ms. Johnson as alleged in this complaint.

18.     Mr. Swatsworth directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

19.     Upon information and belief, Mr. Swatsworth also has an ownership interest in a

7

non-party entity named Applied Resolutions Group

n e

19.     Defendant M & L Associates LLC ("M&L") is an active South Carolina limited liability company. M&L claims to be doing business at 2012 West Highway 160, Suite 11, Fort Mill, South Carolina 29708.  The registered agent for M&L is defendant Monique Nicole Jenkins.  M&L uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  M&L regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  M&L is a "debt collector" as the term is defined and used in the FDCPA.  M&L is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, M&L is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20.     M&L directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

21.     M&L and its owners, members, employees and agents have used multiple telephone numbers in connection with their efforts to collect consumer debts, including 704-705-9414, 803-335-3620, 855-832-0198 and 866-836-9588.

22.     Defendant Monique Nicole Jenkins, also known as Monique Nicole Barley, age 32, is a natural person, purportedly residing at 718 Sycamore Court, Kannapolis, North Carolina 28081, or possibly 215 Rook Road, Charlotte, North Carolina 28216-2698. Ms. Jenkins is the wife of defendant Lemanuel Milton Jenkins II. Ms. Jenkins is an owner, officer, manager, employee and agent of defendant M&L.  Ms. Jenkins uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. Ms. Jenkins regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Jenkins is a "debt collector" as the term is defined and used in the FDCPA. Ms. Jenkins is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Jenkins is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

23.     Ms. Jenkins (a) created the collection policies and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of M&L, (c) oversaw the application of the collection policies and procedures used by defendants and their employees and agents, (d) drafted, created, approved or ratified the tactics and scripts used by defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Johnson as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants and their employees and agents in attempts to collect an alleged debt from Ms. Johnson as alleged in this complaint.

24.     Ms. Jenkins directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

25.     Ms. Jenkins frequently uses the alias "Brooke Jackson" when she is extorting money from consumers. On July 19, 2012, Ms. Jenkins used the name Brooke Jackson and the email address brooke.jackson13@yahoo.com to register with GoDaddy.com, the internet domain

name www.recoverystatellc.com.  Ms. Jenkins currently uses the domain name to send and

receive email with an address of mlassociates@recoverystatellc.com.

26.     Ms. Jenkins has been charged with or convicted of multiple crimes in the States of

North Carolina and Florida.

27.     Defendant Lemanuel Milton Jenkins II, age 30, is a natural person, purportedly

residing at 718 Sycamore Court, Kannapolis, North Carolina 28081, or possibly 215 Rook Road,

Charlotte, North Carolina 28216-2698. Mr. Jenkins is the husband of defendant Monique Nicole

Jenkins. Mr. Jenkins is an owner, officer, manager, employee and agent of defendant M&L.  Mr.

Jenkins uses interstate commerce and the mails in a business the principal purpose of which is

the collection of debts. Mr. Jenkins regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another. Mr. Jenkins is a "debt collector" as the

term is defined and used in the FDCPA. Mr. Jenkins is a "regulated person" as the term is

defined and used in the MRCPA. Alternatively, Mr. Jenkins is a "collection agency" and

"licensee" as the terms are defined and used in the MOC.

28.     Mr. Jenkins (a) created the collection policies and procedures used by

defendants and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of M&L, (c)

oversaw the application of the collection policies and procedures used by defendants and their

employees and agents, (d) drafted, created, approved or ratified the tactics and scripts used by

defendants and their employees and agents to collect debts from consumers, including the tactics

and scripts that were used to attempt to collect an alleged debt from Ms. Johnson as alleged in

this complaint, (e) ratified the unlawful debt collection practices and procedures used by

defendants and their employees and agents in connection with their common efforts to collect

consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful

debt collection practices used by defendants and their employees and agents in attempts to collect

an alleged debt from Ms. Johnson as alleged in this complaint.

29.     Mr. Jenkins directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Ms. Johnson that are described in this complaint.

30.     Mr. Jenkins has been charged with or convicted of numerous crimes in the State

of North Carolina.

31.     Mr. Jenkins and Mrs. Jenkins sometimes operate their debt collection extortion

scam under the unregistered name of West Capital Management LLC.  Mr. Jenkins and Mrs.

Jenkins previously operated their debt collection extortion scam under the unregistered name of

Steinburg & Associates.

32.     Mr. Swatsworth, prior to beginning his debt collection operation at STP, was

employed as a debt collection manager at a debt collection entity named NCO Financial Systems

("NCO"). One of the NCO debt collectors under Mr. Swatsworth watch was Ms. Jenkins. After

Ms. Swatsworth and Ms. Jenkins left NCO, Mr. Swatsworth began his practice of buying

delinquent consumer accounts and placing the accounts for collection with Ms. Jenkins and her

company and its employees.

33.     An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l

Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000); *Verburg et al. v. Weltman, Weinberg &

Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

34.     A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

35.     In January of 2013, plaintiff Cheryl Johnson borrowed approximately $300.00 from an entity named Check 'n Go ("CNG"). Ms. Johnson borrowed the money in what is commonly called a "payday loan," at an annual interest rate that exceeded 300 percent. CNG assigned the transaction an original account number of 15020697. Ms. Johnson borrowed and used the money for personal, family and household purposes.

36.     Ms. Johnson became unable to repay the debt and the account became delinquent.

37.     In June of 2013, CNG charged off the account and related debt.

38.     On or about September 25, 2013, CNG sold the account to non-party United Debt Holding, LLC ("UDH").

39.     According to CNG and UDH, when CNG sold the account to UDH, the alleged account balance was $398.45.

40.     On or about October 2, 2014, UDH sold the account to defendant Solutions To

12

Portfolios, LLC.

41.     According to UDH, when UDH sold the account to STP, the alleged account balance was $398.45.

42.     STP and defendant Anthony Joseph Swatsworth placed the account with defendants M & L Associates LLC, Monique Nicole Jenkins and Lemanuel Milton Jenkins II for collection.

43.     On April 28, 2016, M&L and its employee and agent placed a call to a cellular telephone belonging to Ms. Johnson's daughter, Valerie Johnson, and left the following recorded message on Valerie Johnson's voice mail: "This is not a soliciting [sic] sales call. This is a [sic] urgent message for Cheryl Johnson, a residence [sic] of 2549 Nixon Drive. My name is Brooke Jackson. I'm contacting you today from the office of M & L Associates. The nature of this phone call here is we have a Wage Garnishment Request Order that has been sent out to your Payroll Department.  I'm giving you a courtesy phone call to advise you of this matter and to see if you have yourself an attorney. If so, either you or your attorney needs to contact my office to address this matter. The number is 855-832-0198. Again, it's 855-832-0198. Unfortunately, if I'm unable to speak with you or your attorney, your Payroll Manager will notify you in reference to your wage garnishment at work. You have been properly informed. Please govern yourself accordingly. Thank you and good luck."

44.     Upon information and belief, the person who left the above-quoted message was defendant Monique Nicole Jenkins.

45.     The above-quoted message was a scripted message, that has been left by Ms. Jenkins on telephone voice mail and answering machines of thousands of consumers, as part of

defendants' unlawful scheme to extort money from consumers.

46.     Valerie Johnson forwarded the above-quoted message to plaintiff Cheryl Johnson.

47.     Defendants' message caused plaintiff Cheryl Johnson to suffer extreme embarrassment and distress.

48.     Ms. Johnson hired an attorney to investigate the matter.

49.     On April 29, 2016, Ms. Johnson and her attorney placed a call to telephone number 855-832-0198.  The call was answered by defendants' employee and agent who identified herself as Brooke Jackson. In the ensuing conversation, defendants' employee and agent made the following statements:

a)     "Our company was hired by an agency that goes by the name STP Processing. They are a debt collection company."

b)     We are calling about Ms. Johnson's CNG account.

c)     CNG deposited $398.00 in Ms. Johnson's bank account and the money was not repaid.

d)     Ms. Johnson obtained the loan in January 2013, the account was charged off in June 2013, and the original account number is 15020697.

e)     STP Processing "has retained our services to start a Wage Garnishment Order for $1,825.00 that will be sent out to her current place of employment. I was giving her a courtesy phone call to see if there's something that she would like to resolve voluntarily. If not, then we will have to continue with the service of process and at that point she will be held reliable [sic] for the total amount of $1,825.00."

14

f)  "STP Processing is in Charlotte, North Carolina."

g)  "The wage garnishment amount is $1,825.00, which includes attorney fees and court costs."

h)  If you make a credit card payment, "the name M & L Associates LLC will appear on the bank statement."

i)  "If she doesn't pay, the account is in the last stages of collection, we have to go through with the Wage Garnishment Order for the $1,800.00."

j)  "The email address here is mlassociates@recoverystatellc.com."

50. The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, extortion and unlawful harassment of the consumers, their relatives and other third parties.

51. Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

52. Defendants and their employees and agents falsely represented the amount of Ms. Johnson's alleged debt.

53. Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

54. Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

55. Defendants and their employees and agents falsely represented and falsely implied

that lawyers would become involved in the efforts to collect the alleged debt.

56.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Johnson to collect the alleged debt.

57.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Johnson to collect the alleged debt.

58.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Johnson's wages would be garnished to collect the alleged debt.

59.     Defendants did not intend to file a lawsuit against Ms. Johnson in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

60.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

61.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

62.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

63.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

64.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector

16

for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

65.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

66.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

67.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

68.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

69.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

70.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

71.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §

1692e(10).

72.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

73.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

74.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

75.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

76.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

77.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

78.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Johnson had committed a crime. Ms. Johnson did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. §

487.2158(4).

79.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

80.     Defendants and their employees and agents attempted to extort money from Ms.

Johnson and violated M.C.L. § 750.213.

81.     Defendants and their employees and agents failed to timely send to Ms. Johnson a

notice containing the information required by 15 U.S.C. § 1692g(a).

82.     A debt collector may not communicate, in connection with the collection of a

debt, with any person other than the consumer, except to acquire "location information" about

the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

83.     The FDCPA defines "location information" to mean "a consumer's place of abode

and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

84.     A debt collector when communicating with any person other than the consumer

for the purpose of acquiring location information about the consumer shall identify himself, state

that he is confirming or correcting location information concerning the consumer, and not state

that such consumer owes any debt.  15 U.S.C. § 1692b.

85.     Defendants and their employee and agent placed telephone call to Ms. Johnson's daughter and unlawfully left a scripted message, wrongfully and falsely representing and implying that Ms. Johnson was involved in a lawsuit and that her wages were about to be garnished.

86.     Defendants and their employee and agent in the above-quoted telephone message unlawfully communicated with Ms. Johnson's daughter and violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

87.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

88.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

89.     STP and Mr. Swatsworth were aware, or should have been aware, of the unlawful debt collection practices being used by M&L, Mrs. Jenkins and Mr. Jenkins, and their employees and agents in their efforts to collect debts.

90.     STP and Mr. Swatsworth provided plaintiff's personal and private financial information to M&L, Mrs. Jenkins and Mr. Jenkins, knowing that M&L, Mrs. Jenkins and Mr. Jenkins, and their employee and agents, would engage in the unlawful debt collection practices that are described in this complaint.

91.     STP and Mr. Swatsworth owed a duty of care to plaintiff, not to provide plaintiff's personal and private financial information to persons who STP and Mr. Swatsworth knew or should have know would use that information to attempt to unlawfully extort money from

20

plaintiff. STP and Mr. Swatsworth breached their duty owed to plaintiff.

92.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

93.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

94.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

95.     Plaintiff incorporates the foregoing paragraphs by reference.

96.     Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692b;

b)      Defendants violated 15 U.S.C. § 1692c;

c)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

97.   Plaintiff incorporates the foregoing paragraphs by reference.

98.   Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)   Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the
purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication
with a debtor the following: (i) the legal status of a legal action being taken or
threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the
nonpayment of a debt will result in the debtor's arrest or imprisonment, or the
seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor
without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or
abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure
designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

99.     Plaintiff incorporates the foregoing paragraphs by reference.

100.    Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)   Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)   Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)   Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)   Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 339.916;

b)   Treble the actual damages pursuant to M.C.L. § 339.916;

24

    c)       Statutory damages pursuant to M.C.L. § 339.916;

    d)       Equitable relief pursuant to M.C.L. § 339.916; and

    e)       Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 4 – Invasion of Privacy

101.    Plaintiff incorporates the foregoing paragraphs by reference.

102.    Defendants' acts and omissions were undertaken willfully, maliciously, intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

103.    Defendants' acts and omissions were extreme and outrageous.

104.    Defendants' acts and omissions have caused plaintiff's personal and financial information to be peddled around the country to con men and criminals, exposing plaintiff to repeated and future harm, credit identity theft, and other invasions of her privacy.

105.    As an actual and proximate result of defendants' invasion of plaintiff's right to privacy, plaintiff has suffered, and will continue to suffer, actual damages for which she should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

    a)       Actual damages;

    b)       Exemplary damages;

    c)       Equitable relief, including an injunction, enjoining defendants from communicating plaintiff's personal information to any entity;

    d)       Costs and reasonable attorney's fees; and

    e)       Such further relief as the court deems just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: May 12, 2016

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

26